Bradbury, J.
1. Upon the trial of the case in the court of common pleas, the defendant in error, having introduced his evidence and rested, the plaintiff in error moved that court to direct *137 the jury to return a verdict in its favor; which motion being overruled, it entered an exception. It is upon this exception that the questions arise which we deem material to a decision of- the ease.
That Margrat, while in the service of the plaintiff in error, received the injuries of which he complained, was not disputed; but plaintiff in error contends that the evidence introduced by Margrat disclosed: 1st. That those injuries resulted from his own negligence; 2d, That his evidence did not show negligence on its part; and 3d, That if negligence of its servants was shown, the negligence was that of one who was a fellow servant of Margrat, for which it was not liable.
Margrat was in the service of the plaintiff in error, as brakeman; a part of his duties being to help switch ears in its yards at Deshler in this state, and while there engaged in switching, received the injuries of which he complained, from a locomotive, which, manned by an engineer and fireman, came up from behind and ran over him. Counsel for plaintiff in error, contend that he should have either kept off the track altogether, or maintained a lookout for locomotives and ears. The accident occurred about midday; and if it appeared, simply, that Margrat was on the main track of the company’s roadway, and without looking or listening,- permitted a locomotive to run him down, the presumption that he was negligent would, perhaps be irresistible. Other facts however appeared.
The evidence tended to show that two cars standing in the yard were to be coupled to the train, of which Margrat formed a part of the crew; that he was directed to assist in making the coupling, and being then near the front of the *138 train had to pass to its rear to perform this duty; that his train stood on a side track, which for, probably, four hundred to six hundred feet from its connection with the main track, ran northward close to and parallel with the main track; that the space between the two tracks was icy, causing its use to be difficult and somewhat dangerous as a way for passing to the rear of the train at the speed Margrat’s duties required him to move; that his train began to move backward towards the cars to be coupled, just as he started towards them; that it was quite difficult, if not wholly impracticable, for him to pass along on the outside of the side track over which his train had begun to back. The only choice of a practicable way then, open to him by which to pass to the rear of the backing train to make the coupling, was to go along the main track, or along the space between the main track and the side track. If he chose the latter it threw him close to his moving train, and the ground being slippery and uneven, he might be in danger of falling’ under the cars of which it was composed.
Under these circumstances we think it was the duty of the court of common pleas to submit to the .jury the question whether Margrat was or was not negligent in choosing the main track, rather than the space between the two tracks, to pass to the rear of his train to make the coupling in question.
It is further contended that if it was not negligent for Margrat to go upon the track as he did, yet, having gone upon it, he was negligent in permitting’ the locomotive to overtake and run him down; that being on the track he should have looked and listened, and if he had done so it would *139 have been impossible for the locomotive to take him, unaware, as it did.
We are not disposed to ignore or doubt the rule, that under ordinary circumstances, one who goes upon a railroad track should be held to the duty of using his senses of sight and hearing, and, if injured by reason of failing to do so, must abide the consequences; but this rule is not to be extended so as to deny, in all cases, relief to one who may be injured on account of such failure. Conditions may exist which will excuse it. Did they exist in the case under consideration? The evidence tends to show that Margrat, when the time arrived to do the switching in question was sitting on the locomotive of, his train; that he then looked up and down the track, and although his view extended a great distance in both directions, he saw nothing at all on the main track, but did see the engine that afterwards run him down, standing on a side track, about fifteen hundred feet away; that he stepped from the locomotive, with his back towards the distant engine, and proceeded, as we have before seen, along just outside the main track, towards the cars to be coupled. This led him away from and kept his back towards the distant engine. That as the cars to be coupled were to be added to the train that Margrat was connected with, this train began to back towards them as Margrat stepped from the locomotive on which he had been sitting’. It was his duty to pass along this train to its rear, as we have seen, so as to be ready to make the coupling when the ears to be coupled were reached. This required some quickness„of movement on the part of Margrat, depending upon the length of his train and the rate of speed at which it was moving, neither *140 of which is very clearly shown. But whatever that length, or rate of speed, or the quickness of Margrat’s movements may have been, he was overtaken and run down by this distant engine before he reached the point where the coupling was to be made. No doubt, if he had kept a lookout behind him, the accident would not have occurred. But we do not think the omission to do so, necessarily constitutes negligence, when considered in connection with the other circumstances that the jury were authorized to find from the evidence just noticed. They could have found that he looked in both directions just before stepping on the track; that no object was in sight from which danger could be apprehended, except this locomotive, then standing fifteen hundred feet distant on a side track; that he knew, if the locomotive should come upon the main track and follow after him that he would not thereby be endangered, unless the crew in charge of it should be grossly negligent; for he would be in plain view of them, at a place where switching was not uncommon, and men, therefore, might be expected to be on the tracks; all of which made their duty to maintain a constant outlook, - clear and urgent; that he would only remain on the track a few minutes and was in the performance of a duty requiring his attention. We think the question whether, under these circumstances, his failure to anticipate such gross negligence, by omitting to look behind him for this locomotive, was or was not negligent, fell within the province of the jury, and was therefore rightfully submitted to them for determination.
2. As to the negligence of the plaintiff in error. The evidence tended, as already shown, to prove *141 that Margrat was in plain view from the locomotive which injured him, from the moment it started, fifteen hundred feet away; until it struck him. If the engineer had looked ahead, he would have discovered Margrat moving along the track in the discharge of his duties. If the bell had been rung, or the whistle sounded, Margrat would, probably, have heard one or the other; or even if steam had been turned on, as the engine drew near, the noise its escaping would have made might have given warning. The evidence, however, tended, to prove that hone of these precautions were taken by the engineer, although he was running his engine at quite a high rate of speed through the company’s yards, where brakemen, or other employes of the company might, as we have seen, rightfully be found in the discharge of their duties. Surely, from such evidence, the negligence of the engineer might be inferred.
3. Was the engineer in charge of this locomotive a fellow servant of Margrat, for the consequences of whose negligence the company was not liable to the latter ? Margrat and the engineer in charge of the locomotive that struck him, were in the employment of the same master. The former was a brakeman on one train, while the latter was an engineer on another train of the same company. Neither had been clothed with authority over the other, therefore the relation of superior and subordinate between them had no existence in fact. In the absence of such relation, their common employer would not be liable to either for injuries received through the negligence of the other, unless the rules of law upon the subject heretofore announced by this court have been abrogated. Whaalan v. Railroad Co., 8 Ohio St., *142 249; Railway Co. v. Devinney, 17 Ohio St., 197; Railroad Co. v. Webb, 12 Ohio St., 475; Railroad Co. v. Fitzpatrick, 42 Ohio St., 318. It is claimed that this has been done by the legislature in the third section of an act passed April 2, 1890, 87 Ohio Laws, 150, which reads as follows:
“Section 3. That in all actions against the railroad company for personal injury to, or death resulting from personal injury of, anj^ person, while in the employ of such company, arising from the negligence of such company, or any of its officers or employes, it shall be held in addition to the liability now existing by law, that every person in the employ of such company, actually having power or authority to direct or control any other employe of such company, is not the fellow servant, but superior of such other employe; also, that every person in the employ of such company having-charge or control of employes in any separate branch or department, shall be held to be the superior, and not fellow servant, of employes in any other branch or department, who have no power to direct or control in the branch or department in which they are employed. ”
This section explicitly declares an intent to preserve the existing liability of railroad companies for the negligence of its employes towards each other, as well as to add to it. The liability that existed before and at the time this section was enacted into a law is, perhaps, as clearly set forth by the eases of Railroad Co. v. Keary, 3 Ohio St., 201, and Railroad Co. v. Lewis, 33 Ohio St., 196, as in any of the cases bearing upon the subject to be found in our reports. In the sixth and ninth clauses of the syllabus in the first of the above named cases this court declared that:
*143 “6. A principal is not liable to one servant in his employ for injuries resulting from the carelessness of another servant, when both are engaged in a common service* and no power or control is given to the one over the other. They stand as equals to each other, and are alone liable for the.injuries they may occasion.”
“9. The ag’ent or officer intrusted with power and control over the subordinates and the operations of the business,'is not engaged in a common service with them, admitting of joint participation; nor is he, in any just sense, their fellow servant; but their employments are separate and distinct, although both are necessary to a successful result in the business. ”
While, in the second and third clauses of the syllabus of the latter of the two cases, it states, that:
• “2. Where, however, a master places, one servant in a position of subordination- to another servant, and the subordinate servant, without fault, is injured through the negligence of the superior servant, while both are acting in the common service, the master is liable therefor. ’ ’
“3. Whether or not one servant is placed by a common master under the control of another servant, thereby creating the relation of superior and subordinate between them, must be determined from the evidence in each particular case. ”
Now, if the express rules of a railway company, or its recognized custom, gives to an engineer in charge of a locomotive authority to direct or control a fireman in the discharge of his duties on the same locomotive, then the relation of superior and subordinate is created between the two; and it would seem that the principles announced in the *144 foregoing syllabi would render the company liable to the latter for an injury resulting to him through the negligence of the former, while both were acting in the common service. The remedy was so complete, where the relation of superior and subordinate actually existed, that the statute, here, could have little or no operation. Still, it may be said that the statute makes the rule of liability of certain and universal application, denying any exception to its operation, wherever the relation of subordinate and superior exists, and the subordinate is injured by the negligence of the superior, while engaged in the common service.
The relation of superior and subordinate, however, did not actually exist between Margrat and the engineer by whose negligence he was injured; for, as we have seen, they belonged to different trains and the latter therefore had no authority to. command or direct the former in discharging his duties. But the statute, we think, declares that relation to exist, as a matter of law, for the purpose of charging the company, if the engineer was the superior of — that is, was authorized to command or direct — any co-employe whatever, and Margrat was without such authority. They must have been in “separate” branches or departments of the company’s service, for the section so declares. The section, however, makes no attempt to define the terms, “department,” and “branches;” but these terms should not be limited so as to embrace, merely, those larg’e divisions, created for convenience in administering the affairs of the company. On the contrary, it is more reasonable to suppose that they relate to those minute ones which concern the daily duties of the employes. Those terms are general and comprehensive; but as the *145 legislature discloses no purpose, in this connection, to regulate the internal affairs of a railway company, it. should not be presumed to refer to divisions of its business made for its own ends; and if not to such divisions, what divisions could it mean but those which divide up the employes while in actual service. The section expressly declares a purpose to enlarge the remedy of the employes for accidents occurring in the course of their employment. This declaration emphasizes the presumption that the terms under consideration should be construed as referring to conditions affecting them, ■ rather than to those which are established by the company for its own purposes.
Without pursuing the matter further, we hold that, under the section of the statue under consideration, an engineer on one train is in a separate branch of the company’s service from that of a brakeman of another train belonging to the same company.
That Margrat was a subordinate — that is, no co-employe was subject to his control or direction — ■ seems to have been conceded. It is contended, however, that no competent evidence was introduced by Margrat tending to prove that a fireman on a locomotive is subordinate to the engineer, and therefore the jury were not authorized to find that the engineer was a superior, for whose negligence the company was liable, if he was in a separate branch of ‘its service from that in which Margrat labored. If it should be conceded that the jury was not authorized to use their common knowledge on the subject, yet, if there was evidence which tended to show that according to the usual course of things, relating to the running of railroad trains, *146 a fireman is subject to the direction and control of the engineer • on the same locomotive, it would be sufficient, and the jury had before it some evidence of this character.

Judgment affirmed.